JOSEPH LAWRENCE FLAIG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Flaig v. Commissioner
Docket No. 11370-81.
United States Tax Court
T.C. Memo 1984-150; 1984 Tax Ct. Memo LEXIS 528; 47 T.C.M. (CCH) 1361; T.C.M. (RIA) 84150; March 26, 1984. Earl C. Crouter, for the petitioner. Brian Kawamoto, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioner's income taxes for 1975 and 1976 in the amounts of $7,281 and $5,707, respectively, and a $1,141 addition to tax under section 6651(a)(1), I.R.C. 1954, for 1976. After concessions, the only issue remaining for decision is whether the Commissioner erred in disallowing $7,598 of a deduction of $10,018 claimed as "Promotion and Public Relations" expenses for 1975 and disallowing in toto an $11,739 deduction similarly claimed for 1976. [1] The principal component of the amounts in dispute relate to a "birthday" party given each year by petitioner. In an amendment to the pleadings, petitioner seeks to support the deductions *530 alternatively as "advertising" expenses. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner resided in Los Angeles, California, when he filed his petition herein. During the taxable years he was engaged in the general practice of law as a sole practitioner. The bulk of his practice involved the representation of plaintiffs in personal injury cases, but he also handled a variety of other legal matters. Among numerous items designated as "Other Business Expenses" on petitioner's income tax returns for each of the years involved was a claimed deduction of $10,018 for 1975 described as "Promotion and Public Relations" and a claimed deduction of $11,739 for 1976 similarly identified. The principal component of each of these claimed deductions related to the cost of an annual *531 "birthday" party given by petitioner. Petitioner's birthday was October 12, and each year for at least 14 years, he has given a large "birthday" party on or about that date. He invited many of his past and present clients, their families and friends, and certain "claims managers and supervisors of the insurance companies" that he dealt with. The parties started at about 6:30 p.m. and lasted until about 11:30 p.m. Some 1,000 guests attended these parties in 1975 and 1976, and petitioner hired a banquet room for that purpose. On these occasions, the guests gathered to enjoy food "and lots of it" served buffet style, champagne, punch, coffee, tea, and the music of an orchestra known as "The Esquires". Guests danced to the music thus provided. The parties were so popular that local television and radio stations and newspapers "[came] * * * in greater and greater numbers each year" to cover the event. No significant amount of business was conducted at these parties, although clients would sometimes approach petitioner and inquire about the status of pending legal matters or introduce a potential client. Petitioner would comment briefly and, if needed, suggest a later office *532 appointment. Also, he would occasionally ask a client to sign a lease, an assignment, or a will. However, petitioner admitted that "the primary purpose of the party was not to sign wills and not to sign authorization forms, and so forth". The record shows that during 14 annual parties, clients executed a total of about six wills. Petitioner produced cancelled checks in connection with the 1975 party aggregating $5,188.69 and cancelled checks for the 1976 party aggregating $7,764.64. Part of the expenses incurred in connection with the 1975 party was $2,420 expended for 1,000 "books" and 780 salt and pepper shakers that were distributed as gifts to those who attended. Petitioner also produced cancelled checks in the aggregate amount of $6,732.14 allegedly for "Public Relations, Clients, Christmas, Easter, Etc." for 1975 and in the aggregate amount of $5,135.42 similarly described for 1976. None of the checks referred to in this paragraph related to the "birthday" parties. Some of these non-birthday party checks record payment to, for example, "See's Candy Company", "U.S. Postmaster", the "Biltmore Hotel", "Bank Americard", "American Express", and "Mayesh Flowers". Most *533 of such checks contain the notation "in re Public Relations" or simply "Public Relations", but other such notations include "in re office expense", "Am[erican] Legion Children's Christmas Party", "in re Alterations on Suit", "Happy Happy Happy Birthday", "for Easter Letters", "in re Office Xmas Cards", and "Gifts to Clients". Petitioner's 1975 and 1976 Federal income tax returns also show separate deductions for "postage" and "office expense". These deductions are not here in issue. As previously indicated, petitioner deducted $10,018 on his 1975 return as a "Promotion and Public Relations" expense. This deduction was intended to include the cost of the 1975 birthday party and the other claimed "Public Relations * * * Etc." expenses associated with all of the foregoing cancelled checks. [2] The Commissioner allowed $2,420 of the claimed deduction for 1975 relating to the gifts distributed at the party but disallowed the remaining $7,598. As to the year 1976, the Commissioner disallowed the entire $11,739 claimed as "Promotion and Public Relations" expense. *534 OPINION 1. The party expenses.Section 162(a), I.R.C. 1954, allows "as a deduction all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business". However, we need not consider whether the party-related expenses come within the language of these provisions, because, in our judgment, they fail to satisfy the requirements of section 274, which renders nondeductible expenditures that would otherwise qualify for deduction. Section 274(a)(1), I.R.C. 1954, disallows "otherwise allowable" deductions - [w]ith respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, (Emphasis supplied.) There is no question that petitioner's "birthday" parties constituted entertainment within the meaning of section 274. A gathering of some 1,000 guests to enjoy *535 food, drink, music and dancing is clearly an "activity which is of a type generally considered to constitute entertainment, amusement, or recreation, such as entertaining at night clubs, cocktail lounges [and] theaters". Section 1.274-2(b)(1)(i), Income Tax Regs. Petitioner contends that the "birthday" parties might also be described as good public relations or even advertising. However, such description, even though accurate, is in no way inconsistent with the classification of the parties as "entertainment". Section 1.274-2(b)(1)(ii), Income Tax Regs. Accordingly, petitioner may deduct the expenses with respect to these parties only if such expenses were "directly related to * * * the active conduct of * * * [his] trade or business". [3]
We are unable to find that the entertainment of some 1,000 guests at a buffet dinner or supper at which champagne was served *536 and where an orchestra provided music for dancing creates expenditures which are "directly related" to the "active conduct" of the taxpayer's trade or business of practicing law. Petitioner's brief "chit chat" with clients and potential clients and the signing of what has not been shown to be more than a few documents over a period of many years can at best be considered incidential to the "birthday" parties and too insignificant to require the conclusion that the expenditures with respect to the parties were "directly related" to petitioner's trade or business. The following regulations reinforce the conclusion that we reach (section 1.274-2(c)(7), Income Tax Regs): Expenditures for entertainment * * * will generally be considered not directly related to the active conduct of the taxpayer's trade or business, if the entertainment occurred under circumstances where there was little or no possibility of engaging in the active conduct of trade or business. The following circumstances will generally be considered circumstances where there was little or no possibility of engaging in the active conduct of a trade or business: * * * (ii) The distractions were substantial, such as-- *537 (a) A meeting or discussion at night clubs, theaters, and sporting events, or during essentially social gatherings such as cocktail parties, or (b) A meeting or discussion, if the taxpayer meets with a group which includes persons other than business associates, at places such as cocktail lounges, country clubs, golf and athletic clubs, or at vacation resorts. (Emphasis supplied.) These provisions clearly apply here. Accordingly, the deductions with respect to the expenses of the "birthday" parties are precluded by section 274(a)(1) of the Code and the foregoing regulations. [4] In the circumstances, we need not consider the Government's alternative contention that the claimed deductions are not allowable in any event by reason of petitioner's failure to prove that he satisfied the specifically exacting record-keeping requirements of section 274(d) of the Code and section 1.274-5(b) of the regulations. *538 2. The non-party expenses. The record contains a substantial number of checks involving expenditures made by petitioner that were not related to his annual "birthday" parties. In the aggregate, they amount to $6,732.14 for 1975 and $5,135.42 for 1976. Petitioner describes them generally as "Public Relations, Clients, Christmas, Easter, Etc." As indicated in our findings, most of these checks bear the notation" in re Public Relations", or simply "Public Relations", while some of the checks have other notations written or typed thereon. Our findings set forth a sampling of such other notations, but all of the checks with their notations are part of the stipulated portion of the record and are included in the findings by reference. The Government has not argued on brief that the expenditures reflected in the non-party related checks are subject to the requirements of section 274. But it has contended that the notations on the checks are hearsay, and that petitioner has failed to prove that the checks represent deductible ordinary and necessary business expenses. We reject the Government's objection as to the alleged hearsay character of the notations. They are part of the *539 checks contemporaneously signed by petitioner. To be sure, they constitute self-serving statements and must be viewed as such. To the extent that there is absent satisfying corroborating evidence (for example, specific credible testimony by petitioner under oath) clearly showing the deductible character of the amounts, there is a serious defect in petitioner's undertaking to carry his burden of proof. And, of course, the burden of proof is upon him to establish that he is entitled to the claimed deductions. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioner's evidence in respect to the non-party expenditures was at most skimpy and conclusory. His counsel did not question him about specific checks and the purposes which they served. Testimony by him that he personally made the determination to place the term "Public Relations" on the various checks is no more than a conclusory self-serving statement. It hardly establishes the true nature of any particular expenditure, or that such expenditure would indeed be accurately described by the notation thereon. Further, although the checks themselves do *540 show that payments were made to, among others, various florists, stores, hotels and credit card companies, they do not establish the more important fact -- that the payments represented ordinary and necessary expenses that were proximately related to petitioner's practice of law. Thus, a check to the Biltmore Hotel could pay for an expert witness' room rental, or for petitioner's own personal use. Similarly, the cost of sending flowers might be an ordinary and necessary business expense or might relate to something purely personal. Even the notation "Am[erican] Legion Children's Christmas Party" on checks (and we note that such checks were not payable to the American Legion but rather to a number of different parties) does not necessarily establish the business character of the expenditures without further explanation. Also, deductions for "postage" and "office" expenses as "public relations" expenses are suspect when other, separate, deductions are taken and allowed for "postage" and "office" expense. Although we conclude that petitioner has failed to establish the deductibility of all the expenditures reflected in the checks, we are nevertheless left with a fairly clear impression *541 that some portion of them do indeed constitute deductible ordinary and necessary business expenses proximately related to his practice of law. We have no precise or scientific method for determining what that portion may be, but we may proceed upon the basis of the oft-followed language of the Second Circuit in Cohan v. Commissioner,39 F. 2d 540, 544 (2d Cir. 1930). Accordingly, doing what we can with the materials at hand, and "bearing heavily" upon petitioner for the unsatisfactory state of the record in this connection, it is our best judgment that 15 percent of the aggregate amount of the non-party related checks for each taxable year was proximately related to petitioner's practice of law. We so find as a fact, and hold that such portion of each such aggregate amount is deductible as an ordinary and necessary business expense. Decision will be entered under Rule 155.
Footnotes
1. Petitioner has abandoned his opposition to the section 6651(a)(1)↩ addition to tax for 1976. He did not argue the point in his opening brief, and his reply brief, referring to that addition as a "penalty", states: "in view of the facts, the petitioner is unable to contest the penalty issue".
2. Although the total of the cancelled checks for the party and those unrelated to the party exceeds the amount claimed on the return, petitioner has not sought in his pleadings to increase the claimed deduction. The same situation obtains with respect to the 1976 return.↩
3. There is no suggestion in the record that the "birthday" parties directly preceded or followed "a substantial and bona fide business discussion". Accordingly, the alternate test of section 274↩ that a deduction be "associated with * * * the active conduct of the taxpayer's trade or business", is inapplicable.
4. The Commissioner's allowance of deductions for gifts distributed at the 1975 party is consistent with the result reached above, because section 274(b)(1) makes clear that the limitations therein generally do not apply where gifts to the same individual during the taxable year do not exceed $25. Here, there were gifts costing $2,420 distributed to some 1,000 guests, and there is nothing to suggest that the aggregate gifts by petitioner to any particular individual exceeded $25 during 1975. Petitioner has not made any contention that the expenses relating to the 1976 party included a component for gifts that would be deductible in 1976 even if the other party-related expenses ran afoul of section 274↩ in that year.